IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JEFFREY SWEENEY, | Civil Division |
| Plaintiff, | No. 2:20-cv-1451 |
| v. | |
| COUNTY OF BUTLER d/b/a BUTLER COUNTY PRISON | **JURY TRIAL DEMANDED** |
| Defendant. | |

## COMPLAINT

AND NOW COMES Plaintiff, Jeffrey Sweeney, ("Plaintiff" or "Mr. Sweeney"), by and through his undersigned counsel, and brings this Complaint seeking legal and equitable relief for age and disability discrimination, retaliation and wrongful termination against Defendant County of Butler d/b/a Prison (collectively "Defendant" or the "County") in violation of the Americans with Disabilities Act of 1990 ("ADA") and the ADA Amendments Act of 2008 ("ADAAA"), the Age Discrimination in Employment Act 29 U.S.C. § 621, et seq. ("ADEA"), as well as pendent state law claims arising under the provisions of the laws of this Commonwealth, to wit, the Pennsylvania Human Relations Act, 42 P.S. § 951, et seq. (hereinafter referred to as "PHRA"). Mr. Sweeney states and avers the following:

## JURISDICTION AND VENUE

1. Jurisdiction is invoked pursuant to 28 U.S.C. §§ 1331, 1332 and 1391. This action is authorized and instituted pursuant to the ADA, ADAAA, the ADEA and the PHRA.

2. Pursuant to 28 U.S.C. § 1367(a), The United States District Court for the Western District of Pennsylvania has supplemental jurisdiction over Mr. Sweeney's state-law claims, which

1

arise from the case and/or controversy as the aforementioned claims, for which this Court has original jurisdiction.

3. The unlawful employment practices and wrongful termination were committed by the Defendant at the Butler County Prison, where Plaintiff worked as a Maintenance Repairman. Therefore, the United States District Court for the Western District of Pennsylvania is the proper venue for the action under 42 U.S.C. § 2000e-5(f) and 28 U.S.C. §1391(b).

4. Plaintiff timely exhausted his administrative remedies by filing a charge against Defendant on June 5, 2020 jointly with the Equal Employment Opportunity Commission ("EEOC") and Pennsylvania Human Relations Commission ("PHRC") at 533-2020-01677. Plaintiff's PHRC and EEOC Charges are incorporated by reference as if fully set forth herein. On August 14, 2020, the EEOC mailed Plaintiff a Dismissal and Notice of Rights letter (the "Right to Sue" letter), advising him of the right to bring this action. Plaintiff has filed the instant suit within 90 days of receipt of the Right to Sue letter.

5. At all relevant times hereto, the County was an employer within the meaning of the ADA, ADAAA and PHRA.

## PARTIES

6. Jeffrey Sweeney is a 58-year-old male individual who resides at 110 Olcus Lane, Chicora, Pennsylvania 16025.

7. At all relevant times hereto, Defendant is and was a governmental entity in Butler County, and not political subdivisions of the state afforded Eleventh Amendment immunity in this matter, with its principal place of business at 124 West Diamond Street, Butler, PA 16003.

**FACTS**

8. Plaintiff incorporates by reference the allegations contained in the foregoing paragraphs as though fully set forth herein at length.

9. Mr. Sweeney was a Maintenance Repairman and Union Steward at the Butler County Prison until his illegal termination on March 18, 2020.

10. Mr. Sweeney has been a diabetic since age twenty-six (26), relying upon insulin since 2017.

11. Mr. Sweeney was a qualified individual under the ADA. He had the skill, experience, education, and other job-related requirements as a Maintenance Repairman; and he could perform the job's essential functions with or without an accommodation.

12. The County was aware of his condition, which required him to take insulin twice during his shift.

13. Mr. Sweeney kept his medication in a zip-locked bag in the maintenance shop refrigerator.

14. At the time of Mr. Sweeney's hire and thereafter, he never received any training on contraband, nor did the County advise him as to proper safekeeping for his insulin, flex pen and safety needles, which need to be refrigerated.

15. Thus, he kept them in the refrigerator, in the locked maintenance shop.

16. Mr. Sweeney believed this to be a safe and acceptable practice, because no one ever advised him otherwise, and the shop was kept locked with access limited to maintenance personnel at all times.

17. On or around February 4, 2020, the County (through Major Justin Baptist) conducted a walk-through of the prison, which included the maintenance shop and, specifically, the refrigerator.

18. During the search, Mr. Sweeney's insulin, flex pens and safety needles were visible in the refrigerator and were <u>not</u> confiscated.

19. However, during the contraband search, a bottle was found in the trash can which contained tobacco spit ("spitter").

20. The County questioned and attempted to pin blame to Mr. Sweeney for bringing contraband in the form of a spitter into the shop.

21. On or about February 20, 2020, Mr. Sweeney was questioned William White, County Solicitor, with the presence of Lori Altman from Human Resources.

22. During this meeting, Mr. Sweeney made an off the cuff comment to the effect of *next thing you know I am going to be called up here again for my sugar monitor being confused for a cell phone, which I know is contraband*.

23. Mr. White then asked if Mr. Sweeney takes insulin, to which he replied, "yes."

24. Mr. White questioned Mr. Sweeney regarding his practice of bringing needles into to the shop.

25. Mr. Sweeney advised that he has been keeping them in the refrigerator in the maintenance shop for two years, and that they have been going through security with his lunchbox on a daily basis, without comment or incident.

26. Mr. White stated, "do you know that's contraband."

27. At this point, Defendant did not engage Mr. Sweeney in the interactive process required under the ADA.

28.     Rather they used it as an opportunity to take adverse action against Mr. Sweeney.

29.     On February 24, 2020, while reviewing the prison video surveillance of the maintenance shop area with Mr. White, Devin Schweisenberg (Union Representative), Nancy Natale and Eric Dodd (Union Representative), Mr. Sweeney was accused of being in the Government Center five (5) times during his four-hour shift on the evening of the Ice Festival, which Mr. White interpreted to be "excessive."

30.     This demonstrates the County's intent at concocting a pretextual reason to mask their discriminatory intent in discriminating against Mr. Sweeney, as this claim was entirely baseless.

31.     Mr. Sweeney was forced to seek out his supervisor to explain the reasoning behind each of the five (5) instances. Ultimately, all of the reasons were deemed to be reasonable.

32.     Fearing he was being targeted, Mr. Sweeney went to Beau Sneddon, Deputy Warden, to discuss the situation regarding his insulin, flex pens and needles.

33.     Deputy Sneddon asked Mr. Sweeney to send him an email, indicating that he was keeping these items in the shop refrigerator.

34.     Mr. Sweeney complied, and he responded "thanks, buddy," again no issue was made of how Mr. Sweeney stored his needles at this time, and they were not identified as contraband by Deputy Sneddon.

35.     Days later, Deputy Sneddon asked Mr. Sweeney to begin keeping his needles in the medical department; Mr. Sweeney obliged.

36.     Despite Mr. Sweeney's compliance with the County's requests, combined with the fact that the County knew Mr. Sweeney had been keeping his insulin, flex pen and needles in the

shop refrigerator for over two years, Mr. Sweeney received a two (2) day notice of suspension on March 3, 2020, for bringing "contraband" into the prison.

37. Such action also violates Article X of the collective bargaining agreement, which indicates that the County shall not "suspend….without just cause. The parties agree that included within the concept of "just cause" is the principle that disciplinary action should be *corrective and progressive in nature* and that employees should be apprised of conduct requirements, for violation of which they may be disciplined."

38. Not so much as a verbal warning was offered to Mr. Sweeney, nor was he apprised of the conduct requirements for how he is to store his insulin, flex pen and needles.

39. On or around March 3, 2020, the County placed Mr. Sweeney on a Last Chance Agreement for (1) keeping his needles in the shop refrigerator; and (2) "taking excessive breaks."

40. Mr. Sweeney, the Warden and the Union Representative (Devin Schweinsberg) all refused to sign the Last Chance Agreement, disagreeing with the content set forth therein.

41. First, Mr. Sweeney was never advised that storing his needles in the shop refrigerator was an unacceptable practice.

42. This was a reasonable accommodation for his diabetes.

43. Second, the only evidence that the County has that Mr. Sweeney ever exceeded his 45-minute lunch break was on one occasion—February 6, 2020—when he was in the restroom for a period in excess of thirty-six (36) minutes, due to illness, It is without question that other employees within the County prison were late, on occasion, in returning from breaks and they did not face punishment because they were younger, non-disabled individuals.

44. Mr. Sweeney then went on a previously approved and scheduled vacation from March 10, 2020 to March 17, 2020. On March 18, 2020, Mr. Sweeney returned and presented for his regularly scheduled shift.

45. This was the first time Mr. Sweeney reported to work since the County enacted various COVID-19 protections.

46. When Mr. Sweeney arrived at work, he was directed to enter at the main location with other employees, who typically did not enter there. There was a lot of commotion, given the change in procedure. This was also new to Mr. Sweeney, having been on vacation. There were employees waiting in line to have their temperature taken.

47. Mr. Sweeney was consumed with reminding security of his insulin, flex pen and needles, which were placed inside of his lunchbox. He was scanned by security upon entry to the building and advised security of these items.

48. They advised that they would take the items to the medical annex.

49. Because the aforementioned situation was atypical, and Mr. Sweeney had just returned to work for the first time in over ten (10) days, he was thrown off of his regular routine.

50. He forgot his keys in central, forcing him to come back upstairs, after hanging his jacket in the locked shop.

51. Mr. Sweeney forgot to put his cell phone and herbal chews that were in his jacket pocket in his locker, leaving them in his jacket pocket due to his consummation.

52. These items were in his jacket pocket, in a locked, secure shop, inaccessible to prisoners. Mr. Sweeney then began his work duties for that day.

53. Shortly thereafter, he was contacted by Captain Clyde Moore and called into a meeting with Captain Moore, Jennifer Passarelli, Deputy Warden of Security/Treatment, and Deputy Warden Beau Sneddon in the administration office.

54. He was advised that he was being terminated for brining contraband into the prison in violation of the Last Chance Agreement, after the County almost immediately discovered his cell phone and his herbal chews.

55. Mr. Sweeney would not have been placed on a Last Chance Agreement had the County not discriminated against him due to his disability.

56. The lack of time that elapsed between Mr. Sweeney beginning his duties and the fact that the County searched Mr. Sweeney's jacket are further evidence of the target that the County placed on his back as a result of his age and disabiltiy.

57. Younger, non-disabled employees were not disciplined or terminated for similar violations.

58. The County's aforementioned conduct and disparate treatment, discrimination retaliation and wrongful termination of Plaintiff based on his disability and request for reasonable accommodation were in violation of the ADA, ADAAA, ADEA and the PHRA.

59. Plaintiff is in a protected class under the ADA, ADAAA, ADEA and PHRA at the time the acts of discrimination and retaliation occurred.

60. At all relevant times hereto, Defendant acted or failed to act by and through its duly authorized agents, servants, and employees, who conducted themselves within the scope and course of their employment.

## COUNT I
## DISCRIMINATION, RETALIATION AND WRONGFUL DISCHARGE – AMERICANS WITH DISABILTIES ACT AND AMENDMENTS THERETO ("ADA" AND "ADAAA")
*Jeffrey Sweeney v. County of Butler d/b/a Butler County Prison*

61. Plaintiff incorporates by reference the allegations contained in the foregoing paragraphs as though fully set forth herein at length.

62. Plaintiff is a "qualified individual with a disability" as that term is defined in the ADA and or ADAAA because he has, or had at all times relevant hereto, a physical impairment that substantially limited/limits one or more major life activities, or because he had a record of such impairment.

63. Plaintiff also is a "qualified individual with a disability" as that term is defined in the ADA and/or ADAAA because he was regarded as and/or perceived by Defendant and their agents as having a physical and/or mental impairment that substantially limited/limits one or more major life activities.

64. However, Plaintiff could complete the functions of his position as a Maintenance Repairman with a reasonable accommodation.

65. As such, the foregoing conduct by Defendant, including the failure to engage in the interactive process with Plaintiff and placing him on a Last Chance Agreement based upon his disability, constitutes unlawful discrimination and retaliation against Plaintiff because of his disability and/or perceived disability.

66. As a result of Defendant's unlawful disability discrimination, retaliation and wrongful termination, Plaintiff has suffered damages as set forth herein including substantial lost wages.

WHEREFORE, Plaintiff seeks the damages set forth in the *ad damnum* clause of this Complaint, *infra*.

**COUNT II**
**DISCRIMINATION, RETALIATION AND WRONGFUL DISCHARGE UNDER THE AGE DISCRIMINATION IN EMPLOYMENT ACT ("ADEA")**
*Jeffrey Sweeney v. Jeffrey Sweeney v. County of Butler d/b/a Butler County Prison*

67. Plaintiff incorporates by reference the allegations contained in the foregoing paragraphs as though fully set forth herein at length.

68. At all times relevant in this case, Mr. Sweeney has been at least 40 years of age and protected by the ADEA, 29 U.S.C. § § 621-634.

69. At all times relevant to this case, Defendant was an "employer" within the meaning of the ADEA, 29 U.S.C. §630(b).

70. Although Plaintiff at all relevant times successfully performed his job from the perspective of a reasonable person, he was harassed, belittled, taunted and terminated because of his age and, upon information and belief, was replaced by a younger employee

71. Based on the above-described acts, practices and omissions, Defendant engaged in unlawful discrimination under the ADEA based on Plaintiff's age.

72. Furthermore, the Company's illegal actions against Plaintiff, including their targeting, incessant monitoring and bullying of him, resulted in adverse impacts to the terms and conditions of his employment and further subjecting him to harassment and a hostile work environment.

73. Defendant's conduct was sufficiently severe or pervasive that a reasonable person in Mr. Sweeney's position would find the environment to be hostile or abusive.

74. As such, Mr. Sweeney complained to his supervisors that he was being harassed, made fun of and/or set up to fail because of his age.

75. Defendant knew of the discriminatory conduct Mr. Sweeney was facing and failed to take prompt remedial action to remedy the conduct.

76. Further, Defendant retaliated against Mr. Sweeney. After his initial complaints were waged, his treatment worsened and he was subject to harsher criticism.

77. Mr. Sweeney was subsequently terminated on the basis of his age and/or in retaliation for complaining of the discrimination, harassment and hostile work environment he faced.

78. The foregoing misconduct by Defendant was undertaken with malice and/or reckless indifference to Mr. Sweeney's federally protected right to be free from age discrimination.

WHEREFORE, Plaintiff seeks the damages set forth in the *ad damnum* clause of this Complaint, *infra*.

## COUNT III
## PHRA – DISCRIMINATION and RETALIATION
*Jeffrey Sweeney v. Jeffrey Sweeney v. County of Butler d/b/a Butler County Prison*

79. Plaintiff incorporates by reference the allegations contained in the foregoing paragraphs as though fully set forth herein at length

80. This is an action arising under the provisions of the laws of the PHRA and this Honorable Court has, and should, exercise pendent jurisdiction over the same because the cause of action set forth in this COUNT III arises out of the same facts, events and circumstances as in the above COUNTS I AND II, and therefore judicial economy and fairness dictate that this COUNT II be brought in this same Complaint.

81. At all times relevant, Defendant was an "employer" within the meaning of Section 954(b) of the PHRA.

82. By engaging in the creation and fostering of a discriminatory and retaliatory environment based on Mr. Sweeney's age and/or disability, Defendant violated those sections of the PHRA which prohibits discrimination and retaliation based upon age and disability regarding the continuation and tenure of employment.

83. Defendant knew or should have known about the discriminatory and retaliatory conduct to which Plaintiff was subjected and failed to take appropriate remedial action.

84. Defendant's failure to maintain a workplace free of discrimination and retaliation and the failure to take prompt remedial action were intentional, malicious and in reckless indifference to Plaintiff's protected state rights.

85. Plaintiff engaged in a protected activity as described by the PHRA, which includes the opposition of any practice forbidden by the PHRA, including complaints of discrimination regarding his age, and advising Defendant verbally and in writing of his disability but capability to complete the job functions with reasonable accommodation.

86. Defendant was aware of Plaintiff's protected activity yet retaliated against him. Mr. Sweeney was terminated from a position for which he was qualified and could perform with reasonable accommodation and, upon information and belief, filling the position with a less qualified, younger, non-disabled individual.

87. Defendant's discriminatory and retaliatory conduct towards and wrongful termination of Plaintiff as a result of his engaging in a protected activity remains a violation of the PHRA.

88. Defendant's discriminatory and retaliatory conduct toward and wrongful termination of Plaintiff was intentional, malicious and in reckless indifference to Plaintiff's protected state rights.

WHEREFORE, Plaintiff seeks the damages set forth in the *ad damnum* clause of this Complaint, *infra*.

### **DEMAND FOR JURY**

WHEREFORE, Plaintiff demands judgment against Defendant, and damages in excess of $75,000 as follows:

a. That Plaintiff be awarded actual and consequential damages to make Plaintiff whole including back pay with prejudgment interest, front pay and compensation for lost benefits, in an amount to be proven at trial, and other affirmative relief necessary to eradicate the effects of Plaintiff's damages associated with Defendant's discrimination, retaliation and wrongful termination of Plaintiff pursuant to the ADA, ADAAA, ADEA and PHRA;

b. That Plaintiff be awarded economic and compensatory damages to compensate for all costs associated with the discrimination and retaliation including lost wages and medical expenses;

c. That Plaintiff be awarded nominal damages;

d. That Plaintiff be awarded punitive damages in an amount sufficient to punish Defendant for its intentional, wanton and malicious conduct and to deter similar misconduct;

e. That Plaintiff be awarded the costs of this litigation, including reasonable attorney's fees; and

f. That Plaintiff be awarded such further relief as deemed to be just and proper.

Date:   September 28, 2020                    Respectfully Submitted,


                                                */s/ Stephanie L. Solomon*
Stephanie L. Solomon, Esquire
Pa. I.D. 208056
HKM EMPLOYMENT ATTORNEYS LLP
220 Grant Street
Suite 401
Pittsburgh, PA  15219
412.760.7802
ssolomon@hkm.com

**JURY TRIAL DEMANDED**